Inhabitants of Ninth School District in Weymouth *vs.* John W. Loud & others.

Under the Rev. Sts. *c.* 23, §§ 10, 25, the power of fixing times of vacations and granting holidays for schools is not in the inhabitants of a school district, nor in the prudential committee, but in the general school committee of the town.

Action of tort for breaking and entering the school house of the plaintiffs in Weymouth. The case was submitted to the decision of the court upon the following facts:

In February and March 1857 Roscius R. Walker was duly

elected prudential committee for the district for the year ensu-
ing, and was authorized by the town to select and contract with
the teachers for the district during the ensuing year. And
Walker, as the prudential committee and for the district, did
make a contract with the several school teachers for the district
for the current year, stipulating therein that the district schools
should not be suspended for a day, unless by his consent, or by
the school district, and the teachers so contracted with were
afterwards approved by the school committee, and then entered
upon their duties as teachers, but no notice of this stipulation
was at this time given to the school committee.

On the 24th of July 1857, at a legal meeting of the inhabi-
tants of the school district, it was voted " that the prudential com-
mittee carry out his contract with the teachers of said school ;"
and the meeting was adjourned to the 31st of July, when it was
further voted, " that we understand that the Sons of Temperance
are to have a picnic at Abington Grove, and as our teachers be-
long to that society, that Mr. Walker [prudential committee] be
instructed to close this house [meaning the school house of the
district] on Tuesday next, to give them an opportunity to go
to the same." In pursuance of this vote, the prudential com-
mittee received the key from the teachers on the evening pre-
vious to the picnic, closed the school house, and gave the
teachers leave to attend the picnic. The purport of this vote
was communicated to the school committee on the next day.

The school committee of the town, duly elected and quali-
fied at a meeting thereof in March 1857, soon after their elec-
tion, among other regulations, adopted the following: " No
school shall be suspended during any school day without per
mission of the committee having charge of the same." No
request having been made to the committee having charge of
the schools, nor any permission granted by them, for closing the
school house, or suspending any of the schools for that day
for the purpose of permitting the teachers to attend the picnic,
or for any other purpose, the defendants, who constitute a ma·
jority of the school committee of the town, in pursuance of the
instructions of the school committee, demanded the key of the

school house from the prudential committee on the morning of said Tuesday, after the usual hour for commencing school, to enable them to continue the schools for that day, and it being refused, the defendants thereupon entered the school house by breaking a pane of glass and removing the fastenings of a window and the lock of the outer door, thereby admitting the teachers aforesaid, and such scholars as were present, to their respective school rooms, and the schools were thus continued through that day.

*J. J. Clarke,* (*F. A. Kingsbury* with him,) for the plaintiffs.

*S. Wells & J. Humphrey,* for the defendants.

METCALF, J.   We are of opinion that this action cannot be maintained.   The vote of the plaintiffs on the 31st of July 1857 conferred no authority on Walker, their prudential committee, to close the school house on the following Tuesday; for they had, by law, no power to authorize him so to do.   The direction of the affairs of a school is not by law given to the district, but to the prudential committee and the school committee of the town.   By the Rev. Sts. *c.* 23, § 10, " the inhabitants of every town shall, at their annual meeting, choose, by written ballots, a school committee, who shall have the general charge and superintendence of all the public schools in such town." By § 25, " every town, which is or may be divided into school districts, shall, at their annual meeting, in addition to the school committee for the town, choose one person, resident in each school district, to be a committee for that district, and to be called the prudential committee, who shall keep the school house of such district in good order, at the expense of the district, provide fuel and all things necessary for the comfort of the scholars therein ; select and contract with a school teacher for the district; and give such information and assistance to the school committee of the town as may be necessary to aid them in the discharge of the duties required of them."   The fixing of the times for vacations, or for occasional suspensions, of the schools, and for closing the school houses for a day or more, is not among the above enumerated powers or duties of a prudential committee, nor conferred upon such committee by any

subsequent statute.   We therefore are of opinion that this authority is given to the school committee of the town, who " have the general charge and superintendence of all the public schools." In the present case that committee had made this regulation : " No school shall be suspended during any school day without permission of the committee having charge of the same."   And their permission to close the school house, or to suspend the school for the day on which the house was closed, was neither granted nor requested.   The prudential committee, Mr. Walker, had no authority to close the school house, and the general committee, the defendants, were justified in breaking it open for the admission of the teacher and the scholars who were present.   *School District in Natick* v. *Morse*, 8 Cush. 191.

*Plaintiffs nonsuit.*